# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Murray American Energy, Inc.,**
**Employer Below, Petitioner**

**vs.)    No. 21-0968**    (BOR Appeal No. 2056750)
(Claim No. 2016002259)

**Garrett Arms,**
**Claimant Below, Respondent**


## MEMORANDUM DECISION


Petitioner Murray American Energy, Inc., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Respondent Garrett Arms filed a timely response.[1][2] The issue on appeal is an additional compensable condition. The claims administrator denied the addition of right shoulder traumatic arthropathy to the claim on August 23, 2019. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its May 7, 2021, Order. The Order was reversed by the Board of Review on October 27, 2021, and the request to add right shoulder traumatic arthropathy to the claim was granted. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review's decision is appropriate. *See* W. Va. R. App. P. 21.

Mr. Arms, a coal miner, injured his right shoulder on February 10, 2015, when his right arm was hyperextended while he was holding a strap. On April 7, 2015, Mr. Arms was treated by William Shrader, M.D., for intractable pain in the right shoulder, as well as limited range of motion. Dr. Shrader diagnosed right shoulder internal derangement. An April 14, 2015, MRI showed supraspinatus tendinopathy, cartilage loss, deformity of the posterior labrum, and a loose body. The claim was held compensable for right shoulder and upper arm sprain on July 9, 2015.

---

[1]Petitioner, Murray American Energy, Inc., is represented by Aimee M. Stern, and respondent, Garrett Arms, is represented by Gregory S. Prudich.

[2]For reasons that are not readily apparent from the record, the parties appear to have substituted "Marion County Coal Resources, Inc." for the employer identified below, "Murray American Energy, Inc." Because the orders from which the parties appeal identify the employer as Murray American Energy, Inc., we will utilize that designation in this appeal.

1

Chauncey Santos, M.D., treated Mr. Arms on July 20, 2015, for increased right shoulder pain that was affecting his work. Dr. Santos diagnosed right shoulder sprain and possible right rotator cuff tear. On August 26, 2015, Dr. Santos noted that an x-ray showed osteoarthritic changes and diagnosed impingement syndrome, loose bodies, and osteoarthritis. Dr. Santos opined that the loose bodies and osteoarthritic changes were likely present prior to the compensable injury. Mr. Arms underwent a right shoulder MRI on August 20, 2015, which showed significant osteochondral loose bodies in the bursa, significant glenohumeral articular cartilage loss with multiple small loose bodies in the glenohumeral recess, degenerative signals in the posterior labrum with a cyst on the superior labrum, and moderate tendinopathy of the distal supra and infraspinatus tendons.

The claims administrator authorized right shoulder acromioplasty on September 18, 2015. Mr. Arms underwent right shoulder surgery on September 23, 2015, and the post-operative diagnoses were osteoarthritis, impingement syndrome, and osteochondral body of the anterior joint. It was noted that Mr. Arms had grade 3 and grade 4 chondromalacia of the entire glenoid fossa and humeral head. Dr. Santos's treatment notes indicate Mr. Arms recovered, reached maximum medical improvement, and returned to full duty work on October 29, 2015. On February 9, 2017, Mr. Arms returned to Dr. Santos for increased shoulder pain since he returned to work. After a physical examination, Dr. Santos diagnosed right shoulder impingement. On March 9, 2017, x-rays showed glenohumeral joint osteoarthritis when compared to the prior x-ray. Dr. Santos diagnosed impingement syndrome and traumatic arthritis.

Joseph Grady, M.D., performed an independent medical evaluation on January 20, 2016, in which he found that Mr. Arms was released from Dr. Santos's care in November of 2015 and had no treatment since that time. Dr. Grady found Mr. Arms had reached maximum medical improvement, assessed 4% impairment, and declined to apportion for preexisting conditions.

On May 12, 2017, Mr. Arms was treated by Dr. Clark for shoulder pain that he reported had not improved since his surgery in 2015. Dr. Clark diagnosed advanced osteoarthritis secondary to the compensable injury. On December 4, 2017, Dr. Clark noted that Mr. Arms had a known history of osteoarthritis secondary to the work-related injury and diagnosed advanced osteoarthritis in the right shoulder, localized primary osteoarthritis, and traumatic arthropathy. He opined that the work-related injury had progressed to the point of symptomatic traumatic arthropathy.

Ronald Fadel, M.D., performed a record review on January 4, 2018, in which he opined that the evidence failed to establish a causal connection between the compensable injury and the addition of right shoulder traumatic arthropathy to the claim. He noted that the imaging taken shortly after the injury occurred showed preexisting degenerative joint disease. Dr. Grady performed a record review on January 21, 2020, in which he opined that Mr. Arms had preexisting degenerative changes of the glenohumeral joint which cannot be reasonably attributed to the compensable injury. He noted that following the injury, there was a symptomatic change in the preexisting condition with continuous progression of the degenerative changes. On January 31, 2019, Dr. Clark requested the addition of right shoulder traumatic arthropathy to the claim. He stated that Mr. Arms was injured at work and had to undergo surgery as a result. Mr. Arms then developed advanced radiographic osteoarthritis secondary to the compensable injury. The claims

administrator denied the addition of right shoulder traumatic arthropathy to the claim on August 23, 2019. Mr. Arms testified in a January 21, 2021, deposition that prior to the compensable injury, he had no problems with his right shoulder and had never been treated for any right shoulder issues or symptoms.

In a May 7, 2021, order, the Office of Judges affirmed the claims administrator's denial of the addition of right shoulder traumatic arthropathy to the claim. It found that the evidence clearly shows that Mr. Arms suffers from right shoulder osteoarthritis; however, the issue is whether advanced osteoarthritis developed as a result of the compensable injury. The Office of Judges found that Drs. Fadel, Grady, and Santos all stated that Mr. Arms's preexisting degenerative changes were present prior to the compensable injury. The Office of Judges concluded that their opinions were reliable and supported by the evidentiary record.

The Office of Judges noted that *Gill v. City of Charleston,* 236 W. Va. 737, 783 S.E.2d 857 (2016), states that an aggravation of a preexisting condition is only compensable if such aggravation results in a discrete new injury. The Office of Judges found that Dr. Clark requested the addition of osteoarthritis to the claim and opined that Mr. Arms suffered a symptomatic change after the compensable injury that resulted in a progression of the preexisting degenerative changes. The Office of Judges determined that the compensable injury resulted in an aggravation of a preexisting condition rather than a discrete new injury.

The Board of Review reversed the decision in its October 27, 2021, decision and granted the request to add right shoulder traumatic arthropathy to the claim. It found that Dr. Clark opined that right shoulder traumatic arthropathy resulted from the compensable injury. Mr. Arms was twenty-seven years old at the time of the injury and had no right shoulder issues, diagnoses, or symptoms prior to the work injury. The Board of Review concluded that traumatic right shoulder arthropathy was a discrete new injury and ordered that the condition be added to the claim.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision effectively represents a reversal of a prior order of either the Workers' Compensation Commission or the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. *See* W. Va. Code §§ 23-5-15(c) & (e). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

After review, we agree with the decision of the Board of Review. The evidence clearly shows that Mr. Arms suffers from degenerative changes of the right shoulder. However, the requested condition at issue is traumatic arthropathy, not osteoarthritis as the Office of Judges addressed. The Board of Review was correct to find that traumatic right shoulder arthropathy is a discrete new injury that should be held compensable.

Even if the condition was not a discrete new injury, in Syllabus Point 5 of *Moore v. ICG Tygart Valley, Inc.*, 247 W. Va. 292, 879 S.E.2d 779 (2022), this Court stated that:

> [a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Mr. Arms had no right shoulder symptoms or treatment prior to the compensable injury. Under either the *Gill* or *Moore* standards, right shoulder traumatic arthropathy is a compensable condition in the claim.

Affirmed.

**ISSUED: September 19, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

**CONCURRING IN PART, DISSENTING IN PART:**

Justice Tim Armstead

Armstead, Justice, concurring, in part, and dissenting, in part:

I agree with the memorandum decision's conclusion affirming the Board of Review's order granting Respondent's request to add right shoulder traumatic arthropathy to the claim. The Board of Review properly found that Respondent's traumatic right shoulder arthropathy was a *discrete new injury* that should be held compensable. (Emphasis added). However, I disagree with the memorandum decision's discussion of and reliance on syllabus point five of *Moore v. ICG Tygart Valley, Inc.*, 247 W. Va. 292, 879 S.E.2d 779 (2022). Our ruling in syllabus point five of *Moore* addresses whether "[a] claimant's disability will be presumed to have resulted from the compensable injury[.]"[1] *Id.* In the present case, the Board of Review concluded that Respondent

---

[1] Syllabus point five of *Moore* provides:

4

suffered a discrete new injury. Because this case involves a discrete new injury, rather than a disability that may have resulted from a compensable injury, syllabus point five of *Moore* is not applicable.

Based on the foregoing, I concur with the memorandum decision's conclusion which affirms the Board of Review. However, I respectfully dissent from the memorandum decision's analysis and discussion of syllabus point five of *Moore*. Our ruling in *Moore* is not applicable to this case.

---

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.